785 So.2d 1155 (2000)
Phleshana Edrice SMITH
v.
MICHELIN NORTH AMERICA, INC.
2990861.
Court of Civil Appeals of Alabama.
December 15, 2000.
*1156 Penny D. Hays of Alabama Injury Lawyers, P.C., Birmingham, for appellant.
W.F. Horsley of Samford, Denson, Horsley, Pettey & Bridges, Opelika, for appellee.
ROBERTSON, Presiding Judge.
On October 7, 1999, Phleshana Edrice Smith sued her employer, Michelin North America, Inc. ("Michelin"), alleging that she had injured her knee in the line and scope of her employment and seeking benefits under the Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975. Smith alleged that her injury occurred on September 16, 1998, and that she was disabled as a result. The case was tried before the trial court on March 20, 2000; the trial court entered its judgment on March 27, 2000.
In pertinent part, the judgment stated:
"FINDINGS OF FACT

"1. [Smith] and [Michelin] were both subject to the Alabama Workers' Compensation Law on September 16, 1998.
"2. [Smith] was involved in a work related accident on September 16, 1998, when she injured her right knee while picking up some material. When [Smith] picked up the material she turned, heard a pop in her knee, and felt excruciating pain in her knee. This accident arose out of [Smith's] employment, and [Smith] was acting within the line and scope of her employment when the accident occurred.
"3. Michelin received notice of [Smith's] accident as required by the Alabama Workers' Compensation Law.
"4. As of September 16, 1998, [Smith] was making an average weekly wage of $774.00 per week.
"5. The effect of the injury to [Smith's] right knee did not extend to any other parts of her body, and was exclusively confined to her right knee.
"6. Dr. Kurt Jacobsen, an orthopaedic surgeon in Columbus, Georgia, did arthroscopic surgery on [Smith's] right knee on October 30, 1998.
"7. [Smith's] right knee was injured in 1985 and 1997, but [Smith] had recovered from these injuries by the time she had the work related injury on September 16, 1998.
"8. As a result of the September 16, 1998, accident, Dr. Jacobsen awarded [Smith] a 5 percent permanent partial impairment to her right leg, and the Court finds that [Smith's] right leg is permanently impaired to the extent of 5 percent, and [Smith] has sustained a 5 percent loss of use of her right leg, as a result of the accident made the basis of this suit.
"9. [Smith] reached maximum medical improvement by November 1, 1999, at which time Dr. Jacobson was of the opinion that [Smith] could return to work with certain restrictions.
"CONCLUSIONS OF LAW
"1. The attorney for [Smith] argued, at the hearing of this case, that this Court should consider evidence of vocational disability because of Section 25-5-57(a)(3)i., *1157 Code of Alabama 1975. The Court has determined that this Code Section is inapplicable to this case, since the Code section specifically excepts scheduled injuries, and the Court has concluded that this case does involve a scheduled injury as provided in Section 25-5-57(a)(3)a.
"2. The attorney for [Smith] offered an affidavit and a report of a vocational expert (Plaintiffs Exhibit 10). The attorney for [Michelin] objected to the report, and the Court has sustained the objection. The Court concludes that the evidence was properly excluded because the Court has concluded that this case involves a scheduled injury, and the affidavit and report are not exceptions to the hearsay rule (see Rules of Evidence, Rule 803(6)).
"3. The Court has found, as a matter of fact, that the effect of [Smith's] injury to her right knee did not extend to other parts of her body, and was exclusively confined to her right knee. As a result of this finding of fact the Court concludes that [Smith's] recovery should be limited to the amount allowed under the schedule for injury to the leg. See the following cases: Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968); Whitehead v. International Paper Co., 610 So.2d 400 (Ala.Civ.App.1992); E.C. Corp. v. Kent, 618 So.2d 1357 (Ala.Civ.App.1992); Sullivan, Long & Hagerty, Inc. v. Goodwin, 658 So.2d 493 (Ala.Civ.App.1994); Wolfe v. Dunlop Tire Corp., 660 So.2d 1345 (Ala.Civ.App.1995); and Patrick v. FEMCO Southeast, 565 So.2d 644 (Ala. Civ.App.1990).
"4. The Court concludes that since it has found, as a matter of fact, that [Smith] has sustained a 5 percent loss of use of her right leg she is entitled to be paid permanent partial disability benefits for 5 percent of 200 weeks, or a total of 10 weeks, and based on her average weekly wage, she is entitled to the maximum of $220.00 per week as provided in Code of Alabama 1975, Section 25-5-68(a).
"DECREE OF THE COURT

"It is ORDERED, ADJUDGED AND DECREED by the Court as follows:
"1. [Smith] shall have and recover of [Michelin] workers' compensation benefits in the amount of $220.00 per week to be paid to [Smith] by [Michelin] for a total of 10 weeks.
"2. Costs of Court are taxed against [Michelin].
"3. The Court makes no award of attorney fees, as attorney fees were not requested in the Complaint, and [Smith's] attorney did not request attorney fees at the hearing. In the event [Smith's] attorney wants to ask for an award of attorney fees, the Court will consider amending this order on proper motion."
Smith did not file a postjudgment motion, and she appealed to this court. She argues (1) that the trial court erred in finding that her knee injury was a scheduled injury, (2) that the trial court erred in determining that Smith's proffered evidence concerning Smith's vocational disability was inadmissible, and (3) that the trial court erred in not awarding her attorney a fee based on the compensation awarded.
In addition to the facts set out in the judgment, the record indicates that Smith began working for Michelin in May 1988. At the time or her injury, Smith was working as a tire builder. Her duties required moving product and tire racks weighing approximately 900 pounds, lifting 40-pound sidewall rolls to a height of six feet and removing 50-pound "green" tires from the manufacturing machines approximately *1158 175 times each day. Her injury occurred when she was lifting a roll of material to place on her machine.
The medical treatment performed on Smith was an arthroscopic repair of the medial meniscus ligament in her right knee. After Dr. Jacobsen performed this surgery, Smith received additional treatment for rehabilitation and pain management at the Hughston Clinic in Columbus, Georgia. After Smith reached maximum medical improvement, Dr. Jacobsen rated her disability as 5% of the right leg and 2% of the whole person. Dr. Jacobsen also noted that Smith reported no further trouble with her knee and that the joint recovery was progressing well. He recommended that Smith be released to work, subject to restrictions on her ability to bend, squat, or climb ladders. The medical evidence discloses no indication of an injury to any other part of Smith's body.
At the outset, we note that the evidence in this case is essentially undisputed. However, in the context of a workers'-compensation case, our review of the trial court's findings of fact are still subject to the standard of review set out in the "new" Workers' Compensation Act:
"This new Act provides that an appellate court's review of the proof and consideration of other legal issues shall be without a presumption of correctness. § 25-5-81(e)(1), Ala.Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2), Ala.Code 1975. Our supreme court `has defined the term "substantial evidence," as it is used in § 12-21-12(d), to mean "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."'

Ex parte Trinity Industries, Inc., 680 So.2d 262, 268 (Ala.1996), quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court has also concluded: `The new Act did not alter the rule that this court does not weigh the evidence before the trial court.' Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014 (Ala.Civ.App. 1995)."
Fryfogle v. Springhill Mem. Hosp., Inc., 742 So.2d 1255, 1256 (Ala.Civ.App.1998), aff'd, 742 So.2d 1258 (Ala.1999).
The court in Fryfogle also addressed the application of this standard to the trial court's findings of fact concerning the extent of disability:
"It is the duty of the trial court to make some determination as to the extent of disability. In making the determination, the trial court must consider all the evidence, including its own observations, and interpret it to its own best judgment. This court is precluded from weighing the evidence presented before the trial court. We merely examine the record to determine if the conclusion of the trial court is reasonably supported by the evidence, and, if so, whether the trial court has drawn the correct legal conclusions therefrom."
742 So.2d at 1258 (citations omitted), aff'd, 742 So.2d 1258 (Ala.1999); see also § 25-5-81(e), Ala.Code 1975.
Smith's first argument, that the trial court erred in finding that her injury was a scheduled injury to her right leg rather than to the body as a whole, was addressed recently in Ex parte Dunlop Tire Corp., 772 So.2d 1167 (Ala.2000). In Dunlop Tire our Supreme Court reversed this court's reversal of the trial court's judgment holding that an injury was limited to a scheduled member, the arm. The court in Dunlop Tire first discussed the workers'-compensation-law test for determining *1159 whether an injury was to a scheduled member or to the body as a whole from Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968). In Bell, the supreme court stated:
"[An injury is to the body as a whole when the injury] extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity with respect to the member[; in such a case,] the employee is not limited in his recovery under the Workmen's Compensation Law to the amount allowed under the schedule for injury to the one member."
282 Ala. at 646, 213 So.2d at 811.
The court in Dunlop Tire held that the trial court's finding on the question whether an injury meets the test in Bell is a finding of fact that must be reviewed under the standard set out in Fryfogle, supra. Under that standard, we must conclude that the trial court's finding that Smith suffered an injury to a scheduled member, her right leg, is supported by substantial evidence. The judgment cannot be reversed on this basis.
Smith's second argument is that the trial court erred in refusing to admit an affidavit and vocational-evaluation report from Dr. David Head. Dr. Head's affidavit stated that he was an expert in vocational evaluations, and it was proffered to authenticate his accompanying vocational evaluation report. Our review of the trial court's decision on the admission of evidence defers to the trial court's discretion, and this court will not reverse a ruling in that regard unless the trial court abuses its discretion. Grayson v. Dungan, 628 So.2d 445 (Ala.1993); Williams v. Hughes Moving & Storage Co., 578 So.2d 1281, 1285 (Ala.1991); Roberts v. Public Cemetery of Cullman, Inc., 569 So.2d 369, 373 (Ala.1990). As we discussed in addressing Smith's first argument, the trial court's finding that Smith suffered an injury to a scheduled member is supported by substantial evidence. Therefore, we consider the relevance of a vocational evaluation in that context.
As noted by the trial court, Smith's compensation, i.e., compensation for a permanent partial disability arising from an injury to her leg, is governed exclusively by § 25-5-57(a)(3), Ala.Code 1975. Thus, evidence of vocational disability cannot serve to further any recovery. Because the trial court could have properly determined that evidence of vocational disability would not be relevant to the award of compensation, we conclude that the trial court did not abuse its discretion in denying the admission of the vocational evidence. Grayson, supra.
Finally, Smith argues that the trial court erred by failing to award attorney fees pursuant to § 25-5-90(a), Ala.Code 1975. In pertinent part, that statute states:
"Unless otherwise provided in this chapter, no part of the compensation payable under this article and Article 4 of this chapter shall be paid to an attorney for the plaintiff for legal services, unless upon the application of the plaintiff, the judge shall order or approve of the employment of an attorney by the plaintiff; and in such event, the judge, upon the hearing of the complaint for compensation, either by law or by settlement, shall fix the fee of the attorney for the plaintiff for his or her legal services and the manner of its payment, but the fee shall not exceed 15 percent of the compensation awarded or paid."
(Emphasis added.)
Smith's lawyer was appointed to represent Smith pursuant to the statute. Smith argues that the use of the mandatory *1160 word "shall" requires the trial court to award an attorney fee and therefore requires that we reverse the ruling of the trial court on this issue. Although Smith did not accept the trial court's invitation to seek an attorney fee or raise the issue in a postjudgment motion, we conclude that the issue was nonetheless preserved for appellate review. In Ex parte James, 764 So.2d 557 (Ala.1999), our Supreme Court reached an issue concerning the award of an attorney fee by holding that in an appeal of a case in a nonjury trial an issue is preserved for appeal when the trial court addresses that issue in a written finding. The rationale of James was applied without regard to the action of the appellant in raising the issue to the trial court. Thus, under James, the trial court's statement that it was not awarding an attorney fee in the absence of a request was sufficient to preserve the issue for this court's review.
It is well settled that when the courts are required to construe a statute, they first seek to ascertain the intent of the legislature. BPH, Inc. v. Cochrane, 628 So.2d 911 (Ala.Civ.App.1993). In order to discover that intent, the courts must look to the "natural, plain, ordinary, and commonly understood meaning" of the words used in the statute. Daniels v. Bowers, 518 So.2d 736, 738 (Ala.Civ.App. 1987). Our Supreme Court has held that the word "shall" is mandatory unless it is used in a statutory context where it is plain that the legislature intended a permissive meaning. Prince v. Hunter, 388 So.2d 546 (Ala.1980). See also State ex rel. Hartman v. Thompson, 627 So.2d 966, at 970 (Ala.Civ.App.1993). A careful reading of § 25-5-90(a) shows no indication by the legislature of any intent that the word "shall" was not to be mandatory with respect to the trial court's duty to fix an attorney fee. Accordingly, we must conclude that the trial court erred in failing to award an attorney fee.
The trial court's judgment with respect to Smith's disability and compensation is affirmed. However, that portion of the judgment failing to award an attorney fee is reversed, and the cause is remanded for the trial court to award an attorney fee pursuant to § 25-5-90(a).
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CRAWLEY and THOMPSON, JJ., concur.
YATES and MONROE, JJ., concur in part and dissent in part.
YATES, Judge, concurring in part and dissenting in part.
I concur with the majority's determination that substantial evidence supports the trial court's finding that Smith suffered an injury to a scheduled member and its determination that the trial court did not abuse its discretion in denying the admission of the vocational evidence. However, because I believe Smith failed to preserve the issue of an award of an attorney fee for appellate review, I must respectfully dissent from that portion of the majority opinion addressing that issue.
Smith's attorney did not request an attorney fee either in the complaint seeking benefits or at the hearing. The trial court stated in its order that it was not awarding an attorney fee, because none had been requested; however, the court stated that it would consider amending its order upon a proper motion. Smith's attorney did not file a postjudgment motion seeking an attorney fee.
Relying upon Ex parte James, 764 So.2d 557 (Ala.1999), the majority concludes that the issue of an attorney fee was preserved for appellate review, because the appeal *1161 was from a nonjury trial and the court addressed the issue in a written finding. I point out that Ex parte James was not a majority opinion and that the facts of that case are distinguishable from the facts of this case.
Ex parte James involved a nonjury divorce proceeding in which the wife's attorney made a request at trial for an attorney fee; both the wife's attorney and the husband's attorney presented argument on that issue. The husband's attorney argued that it would be unreasonable to award an attorney fee, because the wife's attorney could offer no evidence indicating the amount of time he had spent on the case. The court awarded the wife's attorney a $100,000 fee. Id. On certiorari review, four members of the supreme court followed Ex parte Vaughn, 495 So.2d 83, 87 (Ala.1986), which states:
"Rule 52(b) provides an exemption from the requirement of invoking a ruling by the trial court on the issue of evidentiary insufficiency when written findings of fact are made. The trial court's ruling on the sufficiency of the evidence is implicit in a decree in which the trial judge is the trier of facts. Moreover, by making written findings of fact, the trial judge has had the additional opportunity to reconsider the evidence and discover and correct any error in judgment which he or she may have made upon initial review. Thus, when written findings of fact are made, they serve the same useful purpose as does an objection to the trial court's findings, a motion to amend them, a motion for a new trial, and a motion to dismiss under Rule 41(b), ... to permit the trial judge an opportunity to carefully review the evidence and to perfect the issues for review on appeal."
The four Justices concurring in the main opinion in Ex parte James stated, "Consequently, when the trial court has made no written findings of fact in a nonjury trial, a party must move for a new trial in order to preserve for review a question relating to the sufficiency or weight of the evidence." 764 So.2d at 559. The four members of the supreme court joining the main opinion wrote that although the trial court did not make any specific findings of fact relative to the award of the $100,000 attorney fee, the award, in and of itself, is a finding of fact based on arguments made by the parties on the issue at trial. The court concluded that this award showed that the trial court believed the evidence to be sufficient to support such an award and that there was a written finding adverse to the husband and that the issue was, therefore, preserved for appellate review. Id.
The present case is distinguishable from Ex parte James in that in this case, Smith's attorney never requested an attorney fee. In Ex parte James, the court entertained arguments and heard evidence on the issue and, even though it did not make specific written findings, it awarded an attorney fee. Four members of the supreme court concluded that the trial court must have believed the evidence to be sufficient to support the award. However, in this present workers' compensation case the award of an attorney fee is mandated by § 25-5-90, Ala.Code 1975. Therefore, any finding on the question whether the attorney fee award is supported by the evidence is irrelevant. Although the award of a fee under § 25-5-90 is mandatory, I believe that implicit in this section is the requirement that a fee be requested by the attorney. The trial court merely recognized in its order that no fee had been requested and provided Smith's attorney an opportunity to request a fee. I do not believe this constitutes a written finding on the issue, and I do not believe the issue was preserved for our review. *1162 Accordingly, I must dissent from the majority opinion as to this issue.
MONROE, J., concurs.